# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **B&B REPORTING, INC.,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | )     **Case No. 5:08-cv-00071-CLS** |
| | ) |
| **EDWARD D. JONES & CO. L.P.,** | ) |
| *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

This action is before the court on plaintiffs' motion to remand.[1] Plaintiffs, B&B

Reporting, Inc., Bruce Blankenship, and Patricia Blankenship, commenced the above-

styled case in the Circuit Court of Jackson County, Alabama, on December 10, 2007,

and their complaint asserted only state law claims. The case was removed to this

court by defendants, Edward D. Jones & Co., L.P. d/b/a Edward Jones ("Edward

Jones"), David L. Nicholas, Hartford Life and Annuity Insurance Company

("Hartford Life"), Economic Concepts, Inc., Richard Smith, Bryan Cave, LLP, and

Pension Strategies, LLC. These defendants claim that plaintiffs' complaint presents

a case arising under the Constitution, laws, or treaties of the United States, and this

court accordingly has original jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. §

---

[1]*See* doc. no. 5 (plaintiffs' motion to remand).

1441.[2]  Specifically, defendants argue that plaintiffs' claims are completely preempted

by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et

seq*.

## I.   FACTS

This is a case involving multiple claims against defendants who or which

allegedly provided services to plaintiffs regarding the establishment, funding, and

administration of an ERISA plan.[3]   Despite the elusive quality of plaintiffs'

complaint, it appears that plaintiffs, B&B Reporting, and its sole stockholders, Bruce

and Patricia Blankenship ("the Blankenships"), brought this action against various

individuals and entities who or which, plaintiffs allege, misled them into establishing

---

[2] *See* doc. no. 1 (defendants' notice of removal).

[3] This case presents the court with a classic "shotgun" complaint.

The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (*i.e.*, all but the first) contain irrelevant factual allegations and legal conclusions. Consequently, in ruling on the sufficiency of a claim, the trial court must sift out the irrelevancies, a task that can be quite onerous.

*Goodison v. Washington Mutual Bank*, 232 Fed. Appx. 922, 923 (11th Cir. 2007) (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)); *see also Butero v. Royal Maccabees Life Insurance Company*, 174 F.3d 1207, 1211 (11th Cir. 1999) ("a classic 'shotgun' pleading — joins every defendant in every count and seeks unspecified compensatory damages . . . .") (dash in original).  The Eleventh Circuit "recently observed that district courts have a 'supervisory obligation,' under [Federal Rule of Civil Procedure] 12(e), to *sua sponte* direct a plaintiff to better plead his complaint 'when a shotgun complaint fails to adequately link a cause of action to its factual predicates.'" *Lampkin-Asam v. Volusia County School Bd.*, 2008 WL 80708, *2 (11th Cir. 2008) (quoting  *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1275 (11th Cir. 2006)).  This court, however, need not further address the "shotgun" nature of plaintiffs' complaint because it lacks jurisdiction over this case.  Thus, the undersigned is powerless to order repleader.

and funding a defined benefit pension plan ("the Plan") for the benefit of the employees of B&B Reporting.[4]  Also, certain defendants allegedly misrepresented that the Plan would provide a significant tax benefit to plaintiffs.[5]  Finally, the drafters of the Plan, as well as the Plan's administrator, are named as defendants, even though it is unclear from plaintiffs' complaint what role these defendants played in the events for which plaintiffs seek redress.

Plaintiffs[6] allege that defendants Edward D. Jones & Co., L.P. d/b/a Edward Jones ("Edward Jones"), David L. Nicholas (an agent or employee of Edward Jones), and Hartford Life and Annuity Insurance Company ("Hartford Life") recommended that plaintiffs employ an investment and tax management tool that consisted of the creation of the Plan, which was to be funded by life insurance policies sold by Hartford Life.  According to plaintiffs, defendants Edward Jones, Mr. Nicholas, and Hartford Life represented that the Plan would be created and maintained in compliance with Section 412(i) of the Internal Revenue Code, 26 U.S.C. § 412, which

---

[4]*See* doc. no. 1 (defendants' notice of removal; plaintiffs' complaint).  The parties have not disclosed any specific facts concerning plaintiff B&B Reporting, beyond that it is a "corporate entity with its principal place of business in Scottsboro, Jackson County, Alabama."  Doc. no. 1 (defendants' notice of removal; plaintiffs' complaint), ¶ 1.  The papers before this court do not reveal the number of people employed by this plaintiff, nor do they discuss the nature of business conducted by B&B Reporting.

[5]*See id.*

[6]Throughout plaintiffs' complaint, B&B Reporting and the Blankenships are referred to collectively as "plaintiffs."  This practice causes confusion in the present case where the allegations of injury done to a corporation, B&B Reporting, are raised as the same allegations of injury to two individuals, the Blankenships.  Essentially, this complaint treats B&B Reporting and the Blankenships as though they are one and the same as opposed to being separate, distinct parties.

these defendants allegedly purported would cause all money contributed to (and all benefits received from) the Plan to be exempted from federal income tax.  Plaintiffs further allege that defendants Edward Jones, Mr. Nicholas, and Hartford Life made assurances that all contributions to the plan would be "secure" and "guaranteed."[7] Plaintiffs claim that they were not aware of "Internal Revenue Code 412(i) Defined Benefit Pension Plans" prior to being advised by these defendants.[8]

In reliance on these alleged misrepresentations, plaintiffs "contracted" with defendant Economic Concepts, Inc., to "prepare qualified plan documents" for plaintiffs and their employees.[9]  In turn, Economic Concepts allegedly "contracted" with (or utilized a plan "drafted or prepared" by) defendant Richard Smith, who plaintiffs assert is either employed by, or doing business as, defendant Bryan Cave, LLP.[10]   Plaintiffs then created and made, for the years 2003 through 2006, contributions to the Plan on behalf of employees of B&B Reporting.[11]  At some point in time, though it is not clear when, plaintiffs "contracted" with defendant Pension Strategies, LLC to "monitor and administer" the Plan.[12]

In December 2005, plaintiffs received "verbal" notification from the Internal

---

[7] Doc. no. 1 (defendants' notice of removal; plaintiffs' complaint), ¶ 12.

[8] *Id.*, ¶ 20.

[9] *Id.*, ¶ 13.

[10] *Id.*

[11] *Id.*, ¶ 14.

[12] *Id.*, ¶ 15.

Revenue Service that an audit would be conducted of the "tax returns" for B&B Reporting.[13]  Plaintiffs claim to have informed defendant Nicholas of this "verbal" notification, and he allegedly assured plaintiffs that "they had nothing to worry about."[14]

According to plaintiffs, the IRS offered Mr. Nicholas the opportunity to engage in a settlement initiative on plaintiffs' behalf; however, plaintiffs allege that Mr. Nicholas allowed the opportunity to lapse without informing plaintiffs of the possibility of settlement negotiations with the IRS.[15]

Ultimately, according to plaintiffs, the IRS audited the records of B&B Reporting, and allegedly concluded that the Plan was *not* a qualified plan under 26 U.S.C. § 412.[16]  Plaintiffs assert that the IRS considered their lack of compliance with the Internal Revenue Code to be "abusive," and assessed against them "substantial interest, penalties and back taxes exceeding the sum of $1,000,000.00."[17]

Plaintiffs' complaint asserts claims against all named defendants for fraud, breach of contract, conversion, negligence, wantonness, outrage, and civil conspiracy.

---

[13]Doc. no. 1 (defendants' notice of removal; plaintiffs' complaint), ¶ 17.

[14]*Id.*  It is unclear from the record why plaintiffs informed Mr. Nicholas of the impending audit of B&B Reporting, and plaintiffs' complaint is silent as to what role Mr. Nicholas played in the audit process.

[15]*See id.*

[16]*Id.*, ¶ 18.

[17]*Id.*

Furthermore, plaintiffs state that they have "been deprived of the opportunity to participate in a qualified retirement plan for the years 2003 through 2006,"[18] and "incurred substantial expense in setting up and establishing the plan, substantial expense including attorney's fees in defending the plan to the Internal Revenue Service, incurred penalties and interest, lost projected retirement benefits, lost other retirement opportunities, and have suffered other monetary damages."[19]

In arguing the merits of remand, plaintiffs represent that "each of the [p]laintiffs' claims are asserted as State Law claims involving tortuous conduct or breach of contract that occurred *prior to* the initiation and establishment of the [Plan]."[20]  Not surprisingly, defendants categorize plaintiffs' claims differently: they say that "Plaintiffs' claims are based on Defendants' alleged conduct relating to the *creation and administration* of the [Plan]."[21]  Neither characterization of plaintiffs' claims is wholly accurate.

Based on the plain language of the complaint, the court concludes that plaintiffs' claims address (a) matters that occurred prior to the establishment of the Plan, (b) the creation of the Plan, and (c) the administration and funding of the Plan. However, only the claims brought against the Plan's administrator — Pension

---

[18]*Id.*

[19]Doc. no. 1 (defendants' notice of removal; plaintiffs' complaint), ¶ 21.

[20]Doc. no. 5 (plaintiffs' motion to remand) at 3 (emphasis in original).

[21]Doc. no. 1 (defendants' notice of removal), ¶ 7 (emphasis added).

Strategies, LLC — whose function it was to "monitor and administer" the Plan, involve matters that occurred exclusively *after* the Plan was established.[22]  Under this court's reading of the complaint, plaintiffs have not specifically alleged, nor have they implied, that defendant Pension Strategies had any involvement whatsoever in the initiation and establishment of the Plan.  Because Pension Strategies was seemingly uninvolved in conduct with respect to this litigation that pre-dates the establishment of the Plan, plaintiffs are claiming to have been injured by Pension Strategies as a result of events occurring after the establishment of the Plan and during its administration.[23]  On the other hand, plaintiffs allegations against all other defendants clearly involve events that occurred prior to or related to the establishment of the Plan.

## II.  DISCUSSION

Title 28, United States Code, Section 1441(a) provides that actions may be removed from state court under the following circumstances:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the

---

[22]*See id.*, ¶ 15.

[23]Specifically, plaintiffs have asserted a breach of contract claim stating that defendants "each breached separate contracts between the [d]efendant and the [p]laintiffs and each [d]efendant breached the comprehensive contract to provide plaintiffs with a qualified pension and retirement plan." Doc. no. 1 (defendants' notice of removal; plaintiffs' complaint), ¶ 23.  It appears evident from plaintiffs' complaint that their only contract with Pension Strategies concerned the administration of the Plan, not its formation.  As such, plaintiffs' complaint arguably asserts a breach of contract claim against Pension Strategies based on events following the establishment of the Plan.

United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.  For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

28 U.S.C. § 1441(a).  Deference to the right of state courts to decide controversies before them requires that federal courts strictly construe removal jurisdiction statutes. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941) (describing Congress's purposive narrowing of federal court removal jurisdiction by eliminating a plaintiff's right to remove cases to federal court).

**A.    The "Well-Pleaded Complaint Rule"**

The Eleventh Circuit observed in *Smith v. GTE Corp.*, 236 F.3d 1292 (11th Cir. 2001), that:

> Under the federal question jurisdiction statute, 28 U.S.C. § 1331, a district court has subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  *Whether a claim arises under federal law for purposes of 28 U.S.C. § 1331 is generally determined by the well-pleaded complaint rule*, "which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987).  A well-pleaded complaint presents a federal question where it "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Franchise Tax Board* [*of the State of California*] *v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28, 103 S. Ct. 2840, 2856, 77 L. Ed. 2d 420 (1983).

*Smith*, 236 F.3d at 1310 (alteration and emphasis supplied).

The powerful, "well-pleaded complaint rule" has emerged from a concern for state court sovereignty. *See Franchise Tax Board*, 463 U.S. at 10.  The well-pleaded complaint rule provides that a case "must be determined from what necessarily appears in the *plaintiff's statement of his own claim* in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose."[24]  *Id.* (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914)) (emphasis supplied).  As the Supreme Court succinctly stated:

> For better or worse, under the present statutory scheme as it has existed since 1887, *a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case "arises under" federal law.*  "[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the *plaintiff's* cause of action."

*Franchise Tax Board*, 463 U.S. at 10-11 (quoting *Gully v. First National Bank*, 299

---

[24]Seventy-five years before its decision in *Franchise Tax Board*, the Supreme Court explained this principle in *Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149 (1908), in the following manner:

> [A] suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based on those laws or that Constitution.  It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States.  Although such allegations show that very likely, in the course, of the litigation, a question would arise, *they do not show that the suit, that is, plaintiff's original cause of action, arises under the Constitution.*

*Id.* at 152 (emphasis supplied).

U.S. 109, 112 (1936)) (emphasis added).

The clear implication of the well-pleaded complaint rule, then, is that any "[d]oubts concerning removability are to be resolved against removal and in favor of remand." *Alabama Department of Environmental Management v. Southern Clay and Energy*, 737 F. Supp. 80, 81-82 (N.D. Ala. 1990); *see also Shamrock Oil*, 313 U.S. at 108-109.

Thus, removal on the basis of a federal question cannot be sustained unless the allegations contained within the four corners of a plaintiff's complaint at the time of removal support such jurisdiction. *See Great Northern Railway Co. v. Alexander*, 246 U.S. 276, 281 (1918); *see also Franchise Tax Board*, 463 U.S. at 10. Stated differently, if the allegations in the present plaintiffs' complaint do not satisfy the requirements of 28 U.S.C. § 1441, the action "cannot be made removable by any statement in the petition for removal or in subsequent pleadings by defendant." *Great Northern Railway Co.*, 246 U.S. at 281. Here, plaintiffs' complaint asserts only state law claims. Therefore, this case does not arise under federal law through the ordinary operation of the well-pleaded complaint rule.

## 1.      Complete preemption as an exception to the well-pleaded complaint rule

There is, however, a narrow exception to the well-pleaded complaint rule based on the doctrine of complete preemption. Under that doctrine, Congress can so fully

legislate in a particular area that any complaint raising claims in that area is "necessarily federal in character," and is removable on the basis of federal question jurisdiction. *See Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); *Ervast v. Flexible Products Co.*, 346 F.3d 1007, 1012 (11th Cir. 2003); *Kemp v. International Business Machines Corp.*, 109 F.3d 708, 712 (11th Cir. 1997). In other words, "[i]f a state law claim is completely preempted [by an Act of Congress], courts are required to recharacterize the claim as one arising under federal law for purposes of determining removal jurisdiction." *Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1353 (11th Cir.1998) (alterations added).

It is well settled that Congress, through ERISA, has accomplished "complete preemption" of a plaintiff's state law claims where relief is available under 29 U.S.C. § 1132(a). *Engelhardt*, 139 F.3d at 1353 (citing *Kemp*, 109 F.3d at 712); *see also* 29 U.S.C. § 1144(a) (stating explicitly that ERISA's provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title"). It must be emphasized, however, that ERISA's complete preemption exists *only when* a state court plaintiff is seeking relief that is available under § 1132(a), in which case that plaintiff's state law claims are "recharacterized" as ERISA claims, and may be removed to federal court. *Engelhardt*, 139 F.3d at 1353. In the present

case, defendants removed this action based on their assumption that ERISA completely preempted plaintiffs' state law claims.

## 2.    Burden of proof on removing defendants

A removing defendant bears the burden of proving that federal jurisdiction exists.  *See, e.g.*, *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir. 2002); *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319-20 (11th Cir. 2001); *Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001) ("[T]he burden is on the party who sought removal to demonstrate that federal jurisdiction exists.") (citing *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1356 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)).

Furthermore, the burden rests on defendants to prove the facts necessary to establish ERISA preemption.   *See Lott v. Metropolitan Life Insurance Co.*, 849 F. Supp. 1451, 1452 (M.D. Ala. 1993) (citing *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 n. 4 (9th Cir. 1988).

A defendant may submit affidavits, depositions, or other evidence to support removal.  *See, e.g., Lott*, 849 F. Supp. at 1452 (citing *Fowler v. Safeco Insurance Co. of America*, 915 F.2d 616, 617 (11th Cir. 1990)).  In the present case, however, when defendants filed their notice of removal, they attached plaintiffs' complaint as the

only evidence of the facts of this controversy.  Of the seven defendants, only

defendants Hartford Life and Pensions Strategies responded to plaintiffs' motion to

remand, but did not support the opposition papers with evidentiary submissions.[25]

Because defendants have not provided evidence supporting federal jurisdiction, the

court must assume that defendants are relying solely on the factual averments in

plaintiffs' complaint to demonstrate ERISA's complete preemption of plaintiffs' state

law claims.[26]  *See, e.g., Leonard*, 279 F.3d at 972 (the removing party bears the

burden of demonstrating a federal court's jurisdiction).  Upon consideration of that

pleading, the court finds that defendants have not established this court's jurisdiction.

## B.   ERISA Preemption

ERISA is a comprehensive statute that subjects employee benefit plans to federal regulation.  *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 732, 105 S. Ct. 2380, 2385, 85 L. Ed. 2d 728 (1985); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S. Ct. 2890, 2896, 77 L. Ed. 2d 490 (1983).   Section 514(a) of ERISA, the preemption clause, provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.  29 U.S.C. § 1144(a).  The Supreme Court has noted that the preemption clause "is conspicuous for its breadth," *FMC Corp. v. Holliday,* 498 U.S. 52, —, 111 S. Ct. 403, 407, 112 L. Ed. 356 (1990), and has instructed that the clause should be "expansively applied," *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, —, 111 S. Ct. 478, 112

---

[25]Hartford Life is the only defendant to this action to file a brief in response to plaintiffs' motion to remand.  *See* doc. no. 10.  Pension Strategies simply adopted Hartford Life's brief as its response to the present motion.  *See* doc. no. 11.

[26]The only information before this court regarding the terms of the Plan are found in plaintiffs' complaint, and it is from that document that this court will draw all inferences as to the provisions of the Plan.

L. Ed. 2d 474 (1990).

*Swerhun v. Guardian Life Insurance Co. of America,* 979 F.2d 195, 197 (11th Cir. 1992) (bracketed alterations in original).

There are "two different kinds of ERISA preemption." *Butero v. Royal Maccabees Life Insurance Co.*, 174 F.3d 1207, 1211 (11th Cir. 1999); *see also, e.g., Hardy v. Welch*, 135 F. Supp. 2d 1171, 1178 (M.D. Ala. 2000) ("Preemption based on ERISA may take one of two forms."). The first form of ERISA preemption, known as "complete preemption" (sometimes called "superpreemption") "arises from Congress's creation of a comprehensive remedial scheme in 29 U.S.C. § 1132 for loss or denial of employee benefits." *Butero*, 174 F.3d at 1211. The fundamental principle is that, "[w]hen Congress comprehensively occupies a field of law, 'any civil complaint raising this select group of claims is necessarily federal in character' and thus furnishes subject-matter jurisdiction under 28 U.S.C. § 1331." *Id*. at 1211-1212 (quoting *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). In complete preemption cases, state law claims are not dismissed, but are "*recharacterize*[*d*] . . . into a federal claim under § 1132." *Ervast v. Flexible Products Co.*, 346 F.3d 1007, 1014 (11th Cir. 2003) (emphasis in original). The doctrine is, thus, a jurisdictional one. *Id*. ("The issue of complete preemption is jurisdictional; meaning, if the claims are not completely preempted, they are not

properly removed and must be remanded to state court.").

The other form of ERISA preemption is referred to as "defensive preemption." *See*, *e.g.*, *Cotton v. Massachusetts Mutual Life Insurance Co.*, 402 F.3d 1267, 1281 (11th Cir. 2005); *Butero*, 174 F.3d at 1212. Defensive preemption is derived from ERISA's explicit preemption provision, 29 U.S.C. § 1144(a). *Cotton*, 402 F.3d at 1281. Section 1144(a) states that ERISA provisions "shall supercede any and all State laws insofar as they may now or hereafter *relate to* any [ERISA-governed] employee benefit plan."[27]  29 U.S.C. § 1144(a) (emphasis supplied). The effect of defensive preemption is to "provide[] . . . an affirmative defense to certain state-law claims." *Hardy*, 135 F. Supp. 2d at 1178. As such, "defensive preemption does not furnish federal subject-matter jurisdiction under 28 U.S.C. § 1331 . . . . On the other hand, defensive preemption *does require dismissal of state-law claims*." *Butero*, 174 F.3d at 1212 (emphasis supplied). *See also Ervast*, 346 F.3d at 1014 ("The defensive preemption issue . . . is substantive; therefore, either in state or federal court, when a state law claim is brought, the defendant may raise the defense that the claims are preempted by ERISA under § 1144, and should be dismissed."). Of course, if defensive preemption applies and state law claims are dismissed, claims asserted

---

[27] The Eleventh Circuit has announced that "[a] party's state law claim 'relates to' an ERISA benefit plan for purposes of ERISA preemption whenever the alleged conduct at issue is intertwined with the refusal to pay benefits." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997).

under ERISA itself may remain a part of the lawsuit.

### 1.    Complete preemption

Turning first to the question of whether plaintiffs' claims are subject to the

doctrine of "complete," or "superpreemption,"

> here's the rule:  ERISA superpreemption exists only when the 'plaintiff
> is seeking relief that is available under 29 U.S.C. § 1132(a).'  *Whitt*, 147
> F.3d at 1330. Regardless of the merits of the plaintiff's actual claims
> (recast as ERISA claims), relief is available, and there is complete
> preemption, when four elements are satisfied.  **First**, there must be a
> relevant ERISA plan.  *See id.*; *Kemp v. International Business Machs.
> Corp.*, 109 F.3d 708, 713 (11th Cir. 1997).  **Second**, the plaintiff must
> have standing to sue under that plan.  *See Engelhardt v. Paul Revere
> Life Ins. Co.*, 139 F.3d 1346, 1350 n. 3 (11th Cir. 1998).  **Third**, the
> defendant must be an ERISA entity.  *See id.*; *Franklin v. QHG of
> Gadsden, Inc.*, 127 F.3d 1024, 1029 (11th Cir. 1997); *see also Morstein
> v. National Ins. Servs., Inc.*, 93 F.3d 715, 722 (11th Cir. 1996) (*en banc*)
> (no preemption at all-not even defensive preemption-when the defendant
> is 'a non-ERISA entity' and the claims do not 'affect relations among
> principal ERISA entities as such').  **Finally**, the complaint must seek
> compensatory relief akin to that available under § 1132(a); often this
> will be a claim for benefits due under a plan.  *See Engelhardt*, 139 F.3d
> at 1354; *Franklin*, 127 F.3d at 1029.

*Butero*, 174 F.3d at 1212 (boldface emphasis supplied).  *See also Tidwell v.

Coldwater Covers, Inc.*, 393 F. Supp. 2d 1257 (N.D. Ala. 2005) (applying the four-

part *Butero* analysis).

"The complete preemption and defensive preemption doctrines are very

complicated and the cases are numerous."  *Cotton*, 402 F.2d at 1282 (quoting *Wilson

v. Coman*, 284 F. Supp. 2d 1319, 1341 (M.D. Ala. 2003)).  In the Eleventh Circuit,

the primary complication plaguing a court's determination of complete preemption is an intra-circuit inconsistency regarding the appropriate analysis a district court must employ when addressing the question of whether a plaintiff's state law claims are completely preempted by ERISA.  The parties make no mention of this in their papers, and defendants direct this court to *Butero* as the relevant, binding authority. While reliance on *Butero* is appropriate, some discussion is warranted prior to embarking on a blind application of its four elements to the present case, because the complete preemption test articulated in that case conflicts with the analyses employed by the Eleventh Circuit in two holdings that predate *Butero*:  *i.e.*, *Franklin v. QHG of Gadsden, Inc.*, 127 F.3d 1024 (11th Cir. 1997), and *Hall v. Blue Cross/Blue Shield of Alabama*, 134 F.3d 1063 (11th Cir. 1998).  *See, e.g., Wilson*, 284 Fed. Supp. 2d at 1330-1342 (M.D. Ala. 2003) (concluding that the analyses of *Franklin* and *Hall* are not altogether consistent with *Butero*).

Although this inconsistency in authority has not yet been resolved by the Eleventh Circuit *en banc*, the panel responsible for the *Cotton* decision focused, in part, on the inconsistencies among *Burero*, *Franklin*, and *Hall*.  *Cotton* held that the "prior panel precedent rule" does not apply to the analysis employed by the Court in *Butero*,[28] and determined that *Butero* represents "this court's clearest statement of the

---

[28]The "firmly established" rule of the Eleventh Circuit is that "each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled *en banc*, or by the Supreme Court." *United States v. Hogan*, 986 F.2d 1364, 1369 (11th

ERISA complete preemption rule."  402 F.3d at 1281.  In deciding to apply the

*Butero* test, *Cotton* reasoned:

> *Hall* and *Franklin* reach results that are consistent with *Butero*, but they
> employ analyses that are inconsistent with the rule it established.  In
> *Wilson v. Coman*, 284 F. Supp. 2d 1319 (M.D. Ala. 2003), the court
> addressed this inconsistency at length and concluded (a) that while
> *Butero* "provides the proper standard for analyzing the question of
> complete preemption in the Eleventh Circuit," (b) that standard is in
> direct conflict with *Franklin*, and (c) "since *Franklin* is an earlier panel
> decision . . ., under the prior panel rule," he was bound to follow
> *Franklin* and not *Butero*.  *Id.* at 1329.  We agree that the analysis of
> *Franklin*, the earlier case, conflicts with that of *Butero*, the later one, but
> we do not think that the prior panel rule obliges us to follow *Franklin*.
> The reason is that our pre- *Franklin* cases are consistent with *Butero*.
> For example, in *Kemp v. Int'l Bus. Mach. Corp.*, 109 F.3d 708 (11th Cir.
> 1997), we held that the complete preemption question "turns on whether
> the plaintiffs are seeking relief that is available under [§ 502(a),]" and
> that "[a]n ordinary ERISA preemption defense, even if valid, is not
> enough to create federal question jurisdiction," and we analyzed the
> complete preemption issue without reference to § 514's "relate to"
> standard.  *Id.* at 711-14.  Indeed, in declining the defendant's invitation
> to reach the defensive preemption issue, we explained, "We cannot
> decide whether the plaintiffs' claims relate to an ERISA plan . . .
> because we have no jurisdiction over this case.  *The defense of ordinary
> ERISA preemption, by itself, does not create federal question
> jurisdiction.*" *Id.* at 714 (emphasis added).  Similarly, in *Brown v. Conn.
> Gen. Life Ins. Co.*, 934 F.2d 1193 (11th Cir. 1991), we distinguished
> defensive preemption under § 514 and complete preemption under §
> 502(a).  *See id.* at 1195-96; *id.* at 1197-99 (Johnson, J., dissenting).  And
> in our most recent complete preemption case (issued after the district
> court's decision in *Wilson*), we again held that a claim is not completely
> preempted under § 502(a) simply because it is defensively preempted
> under § 514; indeed, we specifically stated that "the district court erred

Cir. 1993); *see also*, *e.g.*, *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (*en banc*)
("Under our prior panel precedent rule, a panel cannot overrule a prior one's holding even though
convinced it is wrong.").

in deciding the [complete] preemption issue by applying the defensive preemption analysis." *Ervast v. Flexible Products Co.*, 346 F.3d 1007, 1013 (11th Cir. 2003). Thus, we are not bound by the analyses of *Franklin* and *Hall*; rather, we will apply the complete preemption rule set out in *Butero*.

402 F.3d at 1289-1290.

Since the *Cotton* decision, *Butero* has been relied upon by other courts within the Eleventh Circuit as the binding statement of the complete preemption rule. *See, e.g., Smith v. Wynfield Development Co., Inc.*, 238 Fed. Appx. 451, 456 (11th Cir. 2007) (applying the four-part *Butero* test); *Tidwell*, 393 F. Supp. 2d at 1261 (same). This court likewise finds that, pursuant to *Cotton*, the four *Butero* elements embody the correct analytical framework that a court must apply when determining the issue of complete preemption. Accordingly, this court will not consider the inconsistent, even though prior, analyses employed in *Hall* and *Franklin*.

Further, this court will examine the claims asserted by each of the three plaintiffs against each of the seven defendants in order to answer the question of superpreemption and, thereby, determine this court's jurisdiction or lack thereof. *See, e.g., Butero*, 174 F.3d at 1211-1213 (holding that, in a multiple plaintiff / multiple defendant case, one plaintiff's claims were superpreempted while the second plaintiff's claims were not).

### a.    A relevant ERISA plan

Fortunately, the first element of *Butero* — *i.e.*, that there is a relevant ERISA plan — is undisputed. The parties agree that the Plan referenced in plaintiffs' complaint is an ERISA plan. Therefore, this court need not discuss this point further.

### b.    Standing

In the present case, only two of the three plaintiffs — Bruce and Patricia Blankenships — have standing to sue under the plan. *Butero*, 174 F.3d at 1212. In the complaint, B&B Reporting, asserts that it, acting as an employer, established and funded the Plan, in part, for the benefit of its employees. B&B Reporting is an "employer" as defined under ERISA. *See* 29 U.S.C. § 1002(5) ("The term 'employer' means any person acting directly as an employer . . . in relation to an employee benefit plan . . . ."). Because "Section 1132(a) grants employers no cause of action for damages," *Butero*, 174 F.3d at 1212 (citing *Engelhardt*, 139 F.3d at 1351), and given that B&B Reporting is an ERISA "employer," that entity does not have standing to sue under the Plan. Thus, the second element of *Butero* is not satisfied as to B&B Reporting, and its state law claims are not preempted.

As noted at the beginning of this subsection, however, the Blankenships do have standing to sue under the plan, and the second element of *Butero* is satisfied as to those plaintiffs. The Blankenships claim that they "lost projected retirement benefits" as a result of defendants' actions related to the Plan.[29] By making this

---

[29]Doc. no. 1 (defendants' notice of removal; plaintiffs' complaint), ¶ 21.

claim, there is no logical conclusion other than that the Blankenships expected to receive retirement benefits under the Plan. "The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(7). Because the Blankenships allege that they are entitled to benefits under the plan, the court concludes that they are "beneficiaries" for ERISA purposes. Under the express terms of 29 U.S.C. § 1132(a), a beneficiary is empowered to bring a civil action. Therefore, as beneficiaries, the Blankenships have standing to pursue a claim under that section. *See, e.g., Engelhardt*, 139 F.3d at 1351 (noting that a "beneficiary" has standing to assert a claim under § 1132(a)); *Butero*, 174 F.3d at 1212 (same).[30] Accordingly, the second element of *Butero* — standing — is satisfied by the Blankenships.

### c.    Claims brought against ERISA entities

Defendants, citing to non-binding legal authority,[31] incorrectly argue that they

---

[30]It is worthy of note that the Blankenships' status as shareholders of B&B Reporting does not preclude them from being beneficiaries under the plan. *See Engelhardt*, 139 F.3d at 1351 ("Engelhardt's status as a shareholder does not preclude him from being a beneficiary under the ERISA plan.") (citing *Prudential Insurance Company of America v. Doe*, 76 F.3d 206, 209 (8th Cir. 1996) (controlling shareholder was a beneficiary under ERISA); *Robinson v. Linomaz*, 58 F.3d 365, 370 (8th Cir. 1995) (sole shareholders of corporation were beneficiaries of ERISA plan); *Peterson v. American Life & Health Insurance Company*, 48 F.3d 404, 408 (9th Cir. 1995) (partner in a business concern had standing to sue under ERISA as a beneficiary)).

[31]Defendants assert that *Reliable Home Health Care, Inc. v. Union Central Insurance Co.*, 295 F.3d 505, 515 (5th Cir. 2002) (claims arising out of the selection of an invalid funding mechanism for an employee benefit plan are preempted), and *Camp v. Pacific Financial Group*, 956 F. Supp. 1541, 1550 (C.D. Cal. 1997) (ERISA preempts claims arising out of mismanagement of plan assets as the injury occurs after the plan is established and funded), are determinative as to the issue of whether defendants to this case are ERISA entities for purposes of complete preemption.

are ERISA entities, either because of the nature of plaintiffs' claims against them, or by virtue of their relationships with the Plan.[32]  Defendants' arguments on this point are rooted in an overly-generalized concept of the applicable law.  A defendant is not rendered an ERISA entity because of the nature of a plaintiff's claims, or by virtue of *any* relationship, however tenuous or remote, with an ERISA plan at issue in a lawsuit.  To the contrary, to qualify as an "ERISA entity," a defendant must be one of the following:  "the employer, the plan, the plan fiduciaries, [or] the beneficiaries under the plan."  *Morstein v. National Insurance Services, Inc.*, 93 F.3d 715, 722 (11th Cir. 1996).  *See also*, *e.g.*, *Perkins v. Time Insurance Company*, 898 F.2d 470, 474 (5th Cir. 1990) (same) (citing *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1470 (5th Cir. 1986) (stating that ERISA entities are "the employer, the plan fiduciaries, the plan, and the beneficiaries")).

Defendants do not argue that any of them are — and there is neither an allegation nor evidence to support an inference, that any of the defendants (with the exception of defendant Pension Strategies) are — "the employer, the plan, the plan fiduciaries, [or] the beneficiaries under the plan."  The court will not give

---

Defendants reliance on these cases is misplaced — neither case discusses whether an entity is an "ERISA entity" in light of the four types of "ERISA entities" articulated in *Morstein*, 93 F.3d at 722. The court does not find these holdings persuasive with regard to the issues presented in this action.

[32]*See* doc. no. 10 (Hartford Life's response to motion to remand), at 4-6.

22

consideration to arguments that are not fully developed or bolstered with legal authority. *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a party's "perfunctory and underdeveloped argument") (citing *Flanigan's Enterprises, Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that "fail[ure] to elaborate or provide any citation of authority in support [of an argument]" results in waiver)).  Because there is no basis of fact in which this court could conclude that defendants Edward Jones, David L. Nicholas, Hartford Life, Economic Concepts, Inc., Richard Smith, and Bryan Cave, LLP are "ERISA entities," the third element of the *Butero* test is not met, and the Blankenships' claims against these defendants are not preempted.

That said, defendants' argument that defendant Pension Strategies is an ERISA entity, simply because that defendant is the plan's administrator,[33] warrants some mention, even though it is not a meritorious argument.  Despite the fact that defendants' contention on this point is not supported with any legal authority, the premise is not so far removed from a correct statement of the law that it warrants no consideration.

As discussed above, a "plan fiduciary" is an ERISA entity.  *Morstein*, 93 F.3d at 722.  Where a plan administrator exercises "discretionary authority" over a plan, then that plan administrator is a "fiduciary" of the plan.  29 U.S.C. § 1002(21)(A)(i

---

[33]*See id.* at 6.

23

& ii) (to be a "fiduciary" one must exercise "discretionary authority"); *see also*

*Heffner v. Blue Cross and Blue Shield of Alabama*, 443 F.3d 1330, 1334 (11th Cir.

2006) ("To the extent that it has discretionary authority or control over a plan, Blue

Cross is a fiduciary under ERISA.") (citing 29 U.S.C. § 1002(21)(A)(i) & (iii);

*Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989); *Cotton*, 402 F.3d

at 1277)).  Here, however, no argument is raised — and there is nothing in the record

to support a conclusion — that Pension Strategies exercised "discretionary authority"

over the plaintiffs' Plan.  In their complaint, plaintiffs assert that they contracted with

Pension Strategies "to monitor and administer" the Plan, "including but not limited

to the annual contributions" to the Plan.[34]  If Pension Strategies had "discretionary

authority" over either the administration of the Plan or the management of its assets,

it likely would qualify as a "fiduciary" under the Plan.  *Id.*  As a "fiduciary," Pension

Strategies would, therefore, be an "ERISA entity" for purposes of the third element

of *Butero*.  *See Morstein*, 963 F.3d at 722 (a "fiduciary" is an ERISA entity).  The rub

in the present case lies in the fact that there is only the *allegation* that Pension

Strategies administered the Plan; the complaint is silent as to what entity had

"discretionary authority" over that administration.  Where there is no supporting

evidence, this court cannot assume, as defendants suggest, that Pension Strategies is

---

[34]Doc. no. 1 (defendants' notice of removal; plaintiffs' complaint), ¶ 15.

an "ERISA entity" solely because it is an administrator of the Plan.[35]  Indeed, the Supreme Court explained that ERISA "*does not describe fiduciaries simply as administrators of the plan*, or managers or advisers.   Instead it defines an administrator, for example, as a fiduciary only 'to the extent' that he acts in such a capacity in relation to a plan."  *Pegram v. Herdrich*,  530 U.S. 211, 225-226 (U.S. 2000) (citing 29 U.S.C. § 1002(21)(A)) (emphasis added).  Accordingly, the fact that Pension Strategies administered the plan, standing alone, does not render that entity a "fiduciary" under the plan and, as such, an entity subject to suit under ERISA.

In consideration of the legal requirement that defendants, the removing parties, bear the burden of demonstrating this court's jurisdiction, *see Leonard*, 279 F.3d at 972, and the fact that defendants have not shown that Pension Strategies is an "ERISA entity," the third element of *Butero* is not met, and the Blankenship's claims against tats defendant are not preempted.

In summary, because none of the defendants have been shown to be "ERISA entities," the third element of *Butero* is not met and, consequently, plaintiffs' claims

---

[35]Generally, courts look to the terms of a particular plan to determine whether an administrator or fiduciary has "discretionary authority."  *See, e.g., Aetna Health, Inc. v. Davila*, 542 U.S. 200, 210 (2004) ("Any dispute over the precise terms of the plan is resolved by a court under a *de novo* review standard, unless the terms of the plan 'giv[e] the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'") (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)); *Heffner*, 443 F.3d at 1334 (the Court examined the terms of a benefits plan to determine to what extent an entity had "discretionary authority" over the plan).  In this case, the court has not been provided with a copy of the Plan documents and, thus, cannot embark on such an examination.

are not preempted.[36]  The doctrine of "complete preemption" or "superpreemption" constitutes defendants' only basis for removal of this action.  As such, this court lacks jurisdiction over the action, and this case is due to be remanded to state court.

### 2.    Defensive Preemption

In light of the determination that "complete" or "superpreemption" does not apply to any of the claims asserted in this lawsuit, this court lacks jurisdiction to engage in an analysis as to whether plaintiffs' claims are defensively preempted. Unlike complete preemption, jurisdiction is not conferred on a federal court through defensive preemption of a plaintiff's claims.   *See Butero*, 174 F.3d at 1212 ("[D]efensive preemption does not furnish federal subject-matter jurisdiction under 28 U.S.C. § 1331.").   "As a technical matter, 'a decision regarding complete preemption does not decide the issue of defensive preemption' because 'defensive preemption is a substantive issue that *must be decided by a court of competent jurisdiction*.'" *Cotton*, 402 F.3d at 1291-1292 (quoting *Ervast*, 346 F.3d at 1013 n.7) (emphasis supplied).  "Thus, if a district court remands to state court claims that are not completely preempted, the defendant may still attempt to raise ERISA § 514 preemption as a defense in the state court." *Cotton*, 402 F.3d at 1292.

### C.    Plaintiff's Request for Attorney's Fees and Costs

---

[36]Because superpreemption has not been established in this case, the court need not and will not discuss whether plaintiffs are seeking relief that is available under 29 U.S.C. § 1132 — the fourth element of *Butero*.

In briefing their motion to remand, plaintiffs requested, pursuant to 28 U.S.C. § 1447(c), an award of the costs and attorney's fees they incurred as a result of the removal of this action from state court.  That provision authorizes the court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  However, the Supreme Court has clarified that, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) *only where the removing party lacked an objectively reasonable basis for seeking removal*."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (2005) (emphasis supplied); *see also Bauknight v. Monroe County, Fla.*, 446 F.3d 1327, 1329-32 (11th Cir. 2006) (following *Martin* and finding no abuse of discretion in a district court's refusal to award costs and fees where removal was objectively reasonable and there were no unusual circumstances).  Plaintiffs have not shown either that defendants lacked an objectively reasonable basis for seeking removal, or that unusual circumstances exist that, nevertheless, justify an award of fees.  As such, the request for an award of attorney's fees and costs is due to be denied.

## D.   Defendants' Motion for an Extension of Time

Defendants filed, with plaintiffs' consent, a motion seeking leave to submit, out of time, a responsive submission to plaintiffs' complaint within 30 days after the court issues a ruling on plaintiff's motion to remand.[37]   That motion is due to be

---

[37]*See* doc. no. 12 (defendants' motion for extension of time).

denied as moot.

### III.  CONCLUSION

For the reasons stated herein, plaintiffs' motion to remand will be GRANTED.

An appropriate order will be entered contemporaneously herewith.

DONE this 29th day of April, 2008.

_____
United States District Judge